UNITED STATES *v.* PROCTOR Co. (No. 1120).[1]

ENTRY WITHOUT AN ADDITION TO THE INVOICE PRICE.

> These automobile tires were sold and imported to replace defective tires. The brokers made the entry, following the invoice, without adding anything to the invoice price to make market value. This was not a clerical error. Subsection 7 of section 28, tariff act of 1909, plainly requires, if it is desired to add to the invoice value to make market value, that this should be done at the time of making entry and not afterwards.—United States *v.* Swedish Produce Co. (4 Ct. Cust. Appls., 223; T. D. 33437; United States *v.* Wyman, 4 Ct. Cust. Appls., 264; T. D. 33485).

United States Court of Customs Appeals, January 14, 1914.

APPEAL from Board of United States General Appraisers, Abstract 31245 (T. D. 33160).

[Reversed.]

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel), for the United States.
*Walter S. Penfield* (*Tench T. Marye* of counsel) for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The importers entered for duty three cases of motor tires at the port of Boston in September, 1911. They were entered at the value of 209 pounds 9 shillings. The appraiser added, to make market value, 66 pounds 7 shillings and 8 pence, and imposed additional duty under subsection 7 of section 28 of the tariff act of 1909. The entry value agreed with the invoice value. There was no appeal to reappraisement from the appraiser's action in adding to make market value,

---

[1] Reported in T. D. 34091 (26 Treas. Dec. 75).

but the importers appealed upon the ground that the mistake occurred through a clerical error.   The facts tending to show the so-called clerical error are that the goods were entered for Mr. Bradley W. Palmer through the appellees as brokers.   It appears that in 1910 Mr. Palmer bought certain tires from the manufacturers in England, which in use proved defective and unsatisfactory.   By special agreement these tires were replaced by new tires at a reduced rate.   The tires in question were furnished to Mr. Palmer at the price actually stated in the invoice, but in fixing this price the sellers were doubtless controlled by the considerations above stated.   These facts were, of course, known to Mr. Palmer.   The brokers made the entry without adding anything to the invoice price to make market value, and the question presented is whether this failure to make the addition is a clerical error.

The subsection referred to provides:

SEC. 7. That the owner, consignee, or agent of any imported merchandise may at the time when he shall make and verify his written entry of such merchandise but not afterwards, make such addition in the entry to or such deduction from the cost or value given in the invoice or pro forma invoice or statement in form of an invoice, which he shall produce with his entry, as in his opinion may raise or lower the same to the actual market value or wholesale price of such merchandise at the time of exportation to the United States,   *   *   *.

The course pointed out in this provision was not followed; but it is claimed that inasmuch as there were available to the appraiser catalogues showing the value of such tires it was an obvious or manifest error committed by the brokers which the appraiser was bound to take notice of, and that under the provision of the same subsection that "such additional duties shall not be construed to be penal, and shall not be remitted nor payment thereof in any way avoided except in cases arising from a manifest clerical error," these facts bring the case within the provision for manifest clerical error and authorize a refunding of the excess duties paid under protest.

We think, in any view that can be taken of this case, that the position urged must be held untenable.   There is no doubt on the record that the entry was made in the precise terms intended and that the intent and purpose of the brokers was to follow the invoice in making the entry.   Had they desired to add to the invoice value to make market value, it was plainly their duty, under the first provision quoted from subsection 7, to have done so at the time of making the entry and not afterwards.   The same sources of information, namely, catalogues showing the value (if there be such which show the value conclusively, which is more than doubtful), were open to the brokers as were open to the appraiser, and the provision limiting the right to add to make market value to the time of entry was for the purpose of obviating the necessity of the customs officials being forced to make their examination for the purpose of ascertaining values unaided by the best information which it was within the power of the importer to furnish.

We need not determine whether an entry may be so ridiculously at variance with value as to appear on its face to be a clerical error. If we assume that such a case might arise, this is not such a case. It would not do to say that the discrepancy here shown is one so great as to immediately show upon its face and at a glance that an error had been committed. It was as a result of an investigation by the appraiser that the value of this importation was advanced.

The case falls clearly within the holding of this court in United States v. Swedish Produce Co. (4 Ct. Cust. Appls., 223; T. D. 33437). In this case, as in that, the items were duly set forth on the invoice and the amounts extended were correct according to the quantities and unit price specified with the description of the merchandise. The total values were carried into the entry exactly as invoiced. It was said:

If relief under said subsection 7 is confined to those cases where the error must appear upon the face of the papers to be sent to and which are before the appraiser and the collector at the time of the appraisement and decision thereupon, respectively, it negatives any fraud upon part of the importer. Second, it gives relief in those cases only which call the attention of the appraising officers to the correct valuation of the merchandise, thereby affording them opportunity at the time of the appraisement and decision thereupon to affix the correct market value of the mer- chandise. Third, any rule which permits this provision of the statute to be extended to those cases not obviously made apparent by the papers to the eye of the appraiser and collector, and resting the case upon the possibility of proof dehors said record, must put a premium upon fraud or attempted frauds upon the revenues. It is contrary to our understanding of the word "manifest," as used in the common parlance, which requires something obvious or exposed to view.

Again, in United States v. Wyman (4 Ct. Cust. Appls., 264; T. D. 33485), it was said of an item claimed to be erroneously entered:

This statement of the importers' claim clearly shows that the disputed item, even if nondutiable in character, did not result from a manifest clerical error. The item in question was entered in the invoice in the words and figures intended by the writer; they were interpreted by the collector with the meaning and effect which were intended by the writer at the making of the invoice. This statement negatives the occurrence of a merely clerical error. The clerk who prepared the entry may have misunderstood the law relating to such items, he may have misunderstood the facts, or he may have entered the item inadvertently. Nevertheless, clerically the item was not incorrect, for it stood in the invoice in form and substance as the clerk intended to enter it, and the entry correctly carried the intended signification to the mind of the collector. In such a case it can not be said that the item was a clerical error, much less can it be said that it was a manifest clerical error. For whatever inaccuracy existed in the entry was the result of inaccurate intention on the accountant's part and not of the clerical execution of that intention.

The case is apparently one of some hardship, as must be every case in which no intent to defraud on the part of the importer appears and by inadvertence or inattention obligation to pay a higher rate of duty has been incurred. But, as was said by the court in Hoeninghaus v. United States (172 U. S., 622)—

The meaning and policy of the tariff laws can not be made to yield to the supposed hardship of isolated cases. * * * The administration of such laws can not be narrowed to a consideration of every case as if it stood alone and as if the only ques-

tion was whether there was an actual intention to defraud the Government. * * * If the statutory regulations are found to be too stringent, the remedy can not be found either in the courts whose duty is ·to construe them or in the executive officers appointed to carry them into effect, but in Congress.

The decision of the Board of General Appraisers is *reversed.*