## Thomsen & Co. *v.* United States (No. 1249).[1]

WOOL—WHAT IS NOT CLERICAL ERROR.

There was a mistake made in the invoice in stating the cost of the wool of the importation. To constitute manifest clerical error, this must be apparent to the appraising officers or collector at the time of liquidation and upon the record itself. This is *stare decisis*. There was nothing in the record here to show the appraising officers or collector that the error was caused by an inaccurate statement of the price of the wool.—United States *v.* Swedish Produce Co. (4 Ct. Cust. Appls., 223; T. D. 33437); United States *v.* Wyman & Co. (4 Ct. Cust. Appls., 264; T. D. 33485); United States *v.* Proctor Co. (5 Ct. Cust. Appls., 44; T. D. 34091; Hampton, jr., & Co. *v.* United States (5 Ct. Cust. Appls., 51; T. D. 34093).

United States Court of Customs Appeals, January 14, 1914.

APPEAL from Board of United States General Appraisers, Abstract 33156 (T. D. 33660).

[Affirmed.]

*Brown & Gerry* for appellants.

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal is founded upon an effort of Thomsen & Co., of New York, to be relieved from alleged excess duties imposed by the collector of customs at that port upon an importation of wool from Tientsin, China. While the protest counts solely upon the point that the wool was rated improperly for duty, the proven facts in the record show the claim to be founded upon a mistaken price written upon the invoice as the cost of the wool actually imported. During 1909 A. Walte & Co., of Tientsin, China, invoiced to Thomsen & Co., of

---

[1] Reported in T. D. 34100 (26 Treas. Dec., 100).

New York, 38 bales of wool.  There is no controversy as to the facts, and while there are questions raised in this record as to the sufficiency of the protest and as to the admissibility of a deposition taken in China, we think the material question presented by the appeal may be here decided.  The ultimate question presented is whether or not the error made by A. Walte & Co., in placing a mistaken and incorrect value on the wool actually imported upon the invoice, can, under the circumstances of this importation, be relieved against in this proceeding.  It seems established by the record that A. Walte & Co. had purchased in China 244 bales, or 269.02 piculs of sheep's wool at 13.50 taels, making an aggregate of 3,631.77 taels.  These 269.02 piculs of wool were willowed, which is a process of cleaning and segregating the same, giving a net outturn of cleaned and segregated wools—143.67 piculs of white wool and 4.57 piculs of black wool. The white wool was invoiced to Thomsen & Co. and the black wool retained by them in China.  In making up the invoice, however, the aggregate price of both these classes and quantities of wool was set down as the invoice price of the white wool alone.  The result was that the invoiced value of the white wool alone amounted to 25.27 taels per picul, while in fact the cost of the white wool alone was but 24.50 taels per picul.  Upon the arrival in this country entry was made by Thomsen & Co.  The entry papers bear some confusion. The entry was made for 19,156 pounds of wool, at 4,198 Tientsin taels—nondutiable charges deducted were 336.09 taels, leaving the dutiable value 3,861.91 taels.  In reducing these Tientsin taels a mistake was made by the entrant, who wrote $2,192, instead of the obviously correct sum of $2,348.  We regard this, however, as an unimportant circumstance in the case, for a reading of such an entry convinces of the intention and the fact that it was made in the sum of 3,861.91 taels.  Both the invoice and entered values, therefore, of the importation were at more than 12 cents per pound for the wool. The claim is asserted by appellant, who was the importer, that the wool is dutiable under paragraph 370 as valued at less than 12 cents per pound.  Said paragraph reads:

370.  On wools of the third class and on camel's hair of the third class the value whereof shall be twelve cents or less per pound, the duty shall be four cents per pound.  On wools of the third class, and on camel's hair of the third class, the value whereof shall exceed twelve cents per pound, the duty shall be seven cents per pound.

The one count of the protest is as follows:

Said wool is valued at twelve cents or less per pound.  It is covered by, and is dutiable under, the first sentence of paragraph 370 at only four cents per pound.

There is no claim in the protest of a shortage or nonimportation in part of the invoiced merchandise.  There was no appeal taken to reappraisement.  The only legal ground therefore which can be

asserted upon this appeal from the decision of the Board of General Appraisers overruling the protest is one of clerical error or manifest clerical error. In view of the recent decision of this court we deem it unnecessary to here again review the authorities upon this subject.

While there may be some confusion or lack of uniformity in the interpretations and adjudications of the statute the present legislative status seems clear. Prior to the customs administrative act of 1890, sections 3012½ and 3013 of the Revised Statutes authorized the Secretary of the Treasury generally to refund any payments of duties shown to his satisfaction to have been excessive, and sections 5292 and 5293 of the Revised Statutes, and section 18, act of June 22, 1874 (ch. 391, 18 Stat., 186, 190) authorized the Secretary of the Treasury to remit or mitigate fines, penalties, and forfeitures incurred without willful negligence or fraudulent intent. These provisions were held to include additional duties for undervaluation. This legislative status presented no limitation as to such refunds confining them to manifest clerical errors. The act of March 3, 1875 (ch. 136, 18 Stat., 469) authorized the correction of errors in liquidation, whether for or against the Government, arising solely upon errors of facts. Upon the enactment of the customs administrative act of 1890 sections 3012½ and 3013 were specifically repealed by section 29 of that act. Section 24 of that act authorized the Secretary of the Treasury to correct only manifest clerical errors. Section 32 of the act forbade the remission or refund of additional duties except in "cases arising from a manifest clerical error." This legislative status undoubtedly confined relief in the premises both as to duties and penalties to cases of manifest clerical error only. Prior to the tariff act of 1909 the importer was permitted to add upon entry but not deduct. By the act of 1909, and subsection 7 of section 28 thereof, the right to deduct on entry was allowed the importer. It was urgently recommended to the Congress in 1909 that the previous power vested in the Secretary of the Treasury, by sections 5292 and 5293 of the Revised Statutes, of remitting additional duties when excessive, within his judgment, be restored. This recommendation was rejected by the Congress. The congressional enactment adhered to the previous language of the customs administrative law, confining relief in such cases to that of manifest clerical error only.

This court in United States *v.* Swedish Produce Co. (4 Ct. Cust. Appls., 223; T. D. 33437); in United States *v.* Wyman & Co. (4 Ct. Cust. Appls., 264; T. D. 33485); in United States *v.* Proctor Co., and Hampton, Jr., & Co. *v.* United States, decisions of even date with this, has adhered to the language of Congress in declaring that relief in such cases could only be granted where the error was both clerical and manifest upon the record before the collector at the time of liquidation.

In United States *v.* Swedish Produce Co., *supra,* we said:

If relief under said subsection 7 is confined to those cases where the error must appear upon the face of the papers to be sent to and which are before the appraiser and the collector at the time of the appraisement and decision thereupon, respectively, it negatives any fraud upon part of- the importer. Second, it gives relief in those cases only which call the attention of the appraising officers to the correct valuation of the merchandise, thereby affording them opportunity at the time of the appraisement and decision thereupon to affix the correct market value of the merchandise. Third, any rule which permits this provision of the statute to be extended to those cases not obviously made apparent by the papers to the eye of the appraiser and collector, and resting the case upon the possibility of proof dehors said record, must put a premium upon fraud or attempted frauds upon the revenues. It is contrary to our understanding of the word "manifest," as used in the common parlance, which requires something obvious or exposed to view.

And in United States *v.* Wyman & Co., *supra,* we further said:

This statement of the importers' claim clearly shows that the disputed item, even if nondutiable in character, did not result from a manifest clerical error. The item in question was entered in the invoice in the words and figures intended by the writer; they were interpreted by the collector with the meaning and effect which were intended by the writer at the making of the invoice. This statement negatives the occurrence of a merely clerical error. The clerk who prepared the entry may have misunderstood the law relating to such items, he may have misunderstood the facts, or he may have entered the item inadvertently. Nevertheless, clerically the item was not incorrect, for it stood in the invoice in form and substance as the clerk intended to enter it, and the entry correctly carried the intended signification to the mind of the collector. In such case it can not be said that the item was a clerical error, much less can it be said that it was a manifest clerical error. For whatever inaccuracy existed in the entry was the result of inaccurate intention on the accountant's part and not of the clerical execution of that intention.

It would seem, therefore, that the doctrine of manifest clerical error has become *stare decisis.*

In the case at bar there may have been a clerical error by the author of the invoice in writing the figures representing the value of the whole of their purchase rather than the figures representing the cost of the white wool only. Such may have been a clerical error or it may have been an error of judgment. Whichever it may have been is, in view of the statutes and decisions recited, unimportant. It is insufficient in such cases that the error be merely a clerical one. It must also be a manifest clerical error—a clerical error which is manifest to the appraising officers or collector at the time of liquidation, or some time prior thereto, whereby it may be determined by the record at the time of liquidation that a clerical error has been made which is evidenced by the record. In this case there was nothing in the record to show the appraising officers or the collector that the error was caused by putting down an inaccurate price for the wool. That disclosure was evidenced and is established in this record solely by a deposition taken many months afterward in China. So that, admitting the error to have been a clerical one, it obviously was not

a manifest clerical error within the decisions and statutes quoted. It not being such, and there being no claims of shortage made, and both the entered and invoiced values of the importation being in excess of 12 cents per pound, we are unable to accord to the appellants any relief in this proceeding.

*Affirmed.*